[Cite as *Napoleon Area City School Dist. Bd. of Edn. v. Cultural Ctr. of Henry Cty.*, 2026-Ohio-2471.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

NAPOLEON AREA CITY
SCHOOL DISTRICT BOARD
OF EDUCATION, ET AL.

      CASE NO. 7-25-06

    PLAINTIFFS-APPELLEES,

  v.

CULTURAL CENTER OF
HENRY COUNTY,

      OPINION AND
      JUDGMENT ENTRY

    DEFENDANT-APPELLANT.

---

**Appeal from Henry County Common Pleas Court**
**Trial Court No. 23CV039**

**Judgment Affirmed**

**Date of Decision: June 29, 2026**

---

APPEARANCES:

    *J.P. Burleigh* **for Appellant**

    *Teresa L. Grigsby* **for Appellee City of Napoleon**

    *Aaron Glasgow* **and** *Nelson M. Reid* **for Appellee Napoleon Area City**
    **School District Board of Education**

**MILLER, J.**

{¶1} Defendant-appellant, Cultural Center of Henry County ("CCHC") appeals the January 17, 2025 judgment of the Henry County Court of Common Pleas denying its motion for summary judgment and granting the motion for partial summary judgment filed by the Napoleon Area City School District Board of Education (the "School Board"). For the reasons that follow, we affirm.

{¶2} On June 14, 2017, the School Board entered into a written Real Estate Purchase and Sale Agreement (the "Contract") with the Napoleon Civic Center Foundation for the School Board to sell real estate located at 303-315 West Main Street in Napoleon, Ohio (the "Property"). The Property is the site of former school buildings, including an auditorium. The School Board had ceased operations at the Property in 2015. The Napoleon Civic Center Foundation is the predecessor of the CCHC, and is a non-profit organization that was formed by a group of citizens interested in preserving the Property for the purpose of restoration of the facilities for a community event space.

{¶3} On June 28, 2017, a Quit-Claim Deed was recorded, which deeded the Property from the School Board to the Napoleon Civic Center Foundation. The deed specified that the Property was subject to the provisions of the Contract, which was also recorded. Additionally, the Contract specified that it survived the closing,

would remain in full force and effect after the closing, and would not merge with the deed of conveyance.

{¶4} Specifically, the Quit-Claim Deed states: "Said parcel of land is also subject to the provisions of the Real Estate Purchase and Sale Agreement dated June 14, 2017 . . .." Also, Paragraph 12(c) of the Contract states:

> Survival of Agreement/No Merger. All rights, duties, options, representations, warranties, covenants and conditions of each party contained in this Agreement or contained in any other document executed by one or more parties to this Agreement to effect the transaction herein intended, shall survive the Closing and shall remain in full force and effect after the Closing and shall not be deemed to have merged with the deed of conveyance in this transaction.

Additionally, Paragraph 7 of the Contract provides, in part,

> The foregoing covenants are intended to: (i) be perpetual, (ii) run with the land, (iii) bind the Purchaser and Purchaser's successors and assigns, inclusive of all successors to whom the title to the Property or any portion thereof may be transferred, and (iv) be enforceable personally by Seller, its successors and assigns, and by the general public, including taxpayers of the school district, by specific performance, by injunctive relief, and/or by any other remedy available at law or in equity, including any remedy within the jurisdiction of the City of Napoleon Historic Preservation Commission, with all costs and expenses of enforcement (including attorney fees and costs) to be paid by the Purchaser.

{¶5} Appellant, CCHC, is the successor to the purchaser, Napoleon Civic Center Foundation. Additionally, Paragraph 12(a) of the Contract states: "This Agreement shall be binding upon and shall inure to the benefit of each party to this Agreement and their respective successors and assigns." Accordingly, the Contract is binding on CCHC.

**{¶6}** The Contract required CCHC to complete the renovation of the buildings and obtain a certificate of occupancy ("CO") within five years. That deadline was June 28, 2022. If CCHC did not meet the deadline, then the Contract required CCHC to demolish the buildings. Specifically, within 30 days of the deadline, CCHC would be required to apply to the historic preservation commission for a certificate of appropriateness ("COA") to demolish the buildings and then demolish them within 180 days of receiving that certificate.

In pertinent part, paragraph 7 of the Contract states:

Purchaser shall covenant and agree to complete, on or before the date that is five (5) years after the date on which the deed which transfers the Property from Seller to Purchaser is recorded (the "Completion Date"), a renovation of the building(s) on the Property (collectively, the "Renovation Work") such that a certificate of occupancy "CO" has been issued for each of the building(s) and any portions of the building(s) on the Property by the appropriate governmental authority, agency, or entity or department charged with issuing CO's (the "CO Condition"). In the event that Purchaser does not meet the CO Condition, then within thirty (30) days of the Completion Date, Purchaser shall apply to the City of Napoleon Historic Preservation Commission for a Certificate of Appropriateness ("COA") to demolish the building or buildings or portions thereof which have not been issued the required CO (the "Demolition"), with such Demolition to occur within 180 days of the issuance of the COA, in a good and workmanlike manner, consistent with all applicable laws.

**{¶7}** CCHC conceded it did not meet the deadline to renovate the buildings. It also admitted that it has not applied for a COA to demolish the buildings.

**{¶8}** On March 28, 2023, the School Board and the City of Napoleon (the "City") filed a Complaint against CCHC. The Complaint lists four counts: (1)

breach of contract, (2) specific performance, (3) indemnification, and (4) declaratory judgment. Attached to the Complaint are copies of the Contract, the Quit-Claim Deed, and some correspondence.

{¶9} CCHC filed an Answer, Defenses, and Counterclaims on May 2, 2023. CCHC raised four counterclaims: (1) declaratory judgment and damages for breach of contract; (2) declaratory judgment and damages for violation of substantive due process and property rights; (3) declaratory judgment and damages for compelled speech; and (4) declaratory judgment and damages for uncompensated taking of private property. The counterclaims specifically reference and rely on the Contract and the Quit-Claim Deed. (*E.g.*, Counterclaims at ¶ 1-3).

{¶10} On June 27, 2023, the School Board and the City filed a joint motion to dismiss CCHC's counterclaims. The trial court held a hearing on the motion on February 14, 2024. On April 8, 2024, the trial court issued an order granting the motion dismissing all of the counterclaims.

{¶11} On August 21, 2024, the School Board filed a motion for summary judgment on counts two and four of the Complaint. In its motion, the School Board specifically stated it was *not* seeking an award of damages or an order that it is entitled to indemnification or an award of attorney's fees. Instead, the School Board asked the trial court to require CCHC to fulfill its contractual obligations to proceed with demolition of the buildings on the Property and then to sell the Property. On

September 19, 2024, CCHC filed a motion for summary judgment on all counts in the Complaint.[1]

{¶12} On January 17, 2025, the trial court ruled on these cross-motions for summary judgment. It granted the School Board's motion and denied CCHC's motion. It declared CCHC to be in breach of the Contract and ordered CCHC to specifically perform its remaining obligations under the Contract.

{¶13} CCHC filed a timely notice of appeal raising three assignments of error for our review.

**First Assignment of Error**

**The trial court erred in granting Plaintiffs School Board and City's Motion to Dismiss Defendant's Counterclaims, as Defendant CCHC had pled valid counterclaims for a violation of CCHC's substantive due process rights; an uncompensated taking of private property; and compelled speech. See generally Docket # 35.**

{¶14} In its first assignment of error, CCHC argues the trial court erred in granting the motion to dismiss its counterclaims. Although CCHC set forth four counts or claims for relief in its counterclaims, on appeal CCHC only presents arguments regarding Counts Two, Three, and Four. First, CCHC argues that it presented a valid claim asserting a substantive due process violation. Next, CCHC contends that enforcement of the contract constitutes an unconstitutional "taking"

---

[1] The City did not file a motion for summary judgment.

of its property. Finally, CCHC alleges that enforcement of the contract violated its First Amendment right to free speech.

{¶15} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.,* 2018-Ohio-15, ¶ 41. In order to determine whether there was a breach of the contract, we must interpret the terms of the contract.

{¶16} "[T]he construction and interpretation of contracts are matters of law subject to a de novo standard of review." *Thiel's Wheels, Inc. v. State Route 30, Ltd.,* 2022-Ohio-2093, ¶ 11 (3d Dist.).

As the Supreme Court of Ohio has explained:

When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.

*Sunoco, Inc. (R & M) v. Toledo Edison Co.,* 2011-Ohio-2720, ¶ 37.

{¶17} As an initial matter, we highlight that CCHC obtained the Property subject to the terms in the Contract—despite the recording of the Quit-Claim Deed. The "merger by deed" doctrine provides that, "when a deed is delivered and

accepted *without qualification*, the underlying purchase contract becomes merged into the deed and a cause of action no longer exists upon the contract." (Emphasis added.) *Newman v. Group One*, 2005-Ohio-1582, ¶ 13 (4th Dist.); *see also Fuller v. Drenberg*, 3 Ohio St.2d 109 (1965), paragraph one of the syllabus. The doctrine is essentially an application of the contract doctrine of integration. *Newman* at ¶ 13.

{¶18} "'[I]f it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions do so continue. Similarly, the merger doctrine should only be applied as a canon of construction that attempts to arrive at the true intention of the parties to a deed. Thus, if there is a specific survival clause in the prior contract of sale, or in a contemporaneous document delivered at the same time as the deed, which states that its provisions are to survive the delivery of the deed, then the merger doctrine does not apply.'" (Emphasis deleted.) *Newman* at ¶ 13, quoting 14 Powell on Real Property (1995) 81A-136, Section 81A.07[1][d].

{¶19} Based on the language in the Quit-Claim Deed and Contract, set forth above, including the survival clause in the Contract and the Quit-Claim Deed's reference to the Contract, it is apparent the parties intended the Contract to survive delivery and recording of the Quit-Claim Deed. Therefore, the doctrine of merger by deed does not apply and the Contract's provisions continued in force. *See Newman* at ¶ 13-14; *United States v. Ohio*, 787 F.3d 350, 357 (6th Cir. 2015) (where quitclaim deed expressly referred to agreement, quitclaim deed was not intended to

displace or supersede agreement and did not affect the parties' obligations under the agreement).

**{¶20}** Despite this, CCHC argues the contract provisions here must yield when in conflict with constitutional rights. This general argument is the backbone of CCHC's contentions in the first assignment of error and portions of its other assignments of error. The overarching problem for CCHC is that the Contract's terms do not violate CCHC's constitutional rights, as shown below.[2]

*Standard of Review*

**{¶21}** "An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Perrysburg Twp. v. City of Rossford*, 2004-Ohio-4362, ¶ 5. We accept as true all factual allegations in the complaint. *Id.* Also, the factual allegations, and any reasonable inference drawn from them, must be construed in the nonmoving party's favor. *Alford v. Collins-McGregor Operating Co.*, 2018-Ohio-8, ¶ 10. "To grant the motion, 'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.'" *Id.*, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12. Thus, in order for the trial court to grant the School Board and the City's motion to dismiss CCHC's counterclaims, it must appear beyond doubt that CCHC

---

[2] The parties do not dispute whether the School Board's actions constituted "state action," so we will assume, without deciding, that the School Board's actions did, in fact, constitute "state action" for purposes of this appeal.

can prove no set of facts in support of their counterclaims that would entitle CCHC to the relief sought.

{¶22} However, unsupported legal conclusions in the complaint are not accepted as true. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193 (1988). Additionally, the court may consider documents that are attached to or incorporated into the complaint. *Rena Lyon Revocable Trust v. Berry*, 2025-Ohio-425, ¶ 18 (3d Dist.); *State ex rel. Washington v. D'Apolito*, 2018-Ohio-5135, ¶ 10. Thus, in an action alleging a breach of contract, a reviewing court must look not only to the allegations in the complaint but also to the language of the contract. *Lima Refining Co. v. Linde Gas N. Am., LLC*, 2022-Ohio-2185, ¶ 10 (3d Dist.). Furthermore, a court is not required to accept allegations in a complaint as true when they are contradicted by documents attached to or incorporated into the complaint. *Id.* at ¶ 11; *State ex rel. Washington* at ¶ 10.

*1. CCHC's Substantive Due Process Claim*

{¶23} In Count Two of its Counterclaims, CCHC alleged the School Board engaged in prohibited conduct—specifically, forcing CCHC to destroy and alienate its own property against its will. According to CCHC, the School Board did so by: passing a resolution to authorize the initiation of litigation against CCHC for breach of contract; approving a litigation cost-sharing agreement with the City; and filing the Complaint. CCHC further alleges the School Board took those actions with the goal of forcing CCHC to apply for a COA, demolish the buildings on the Property,

and then sell the Property. CCHC alleges this conduct violated its substantive due process rights and caused it damages.

**{¶24}** Citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the trial court stated that substantive due process is only violated when the conduct can properly be characterized as conscience-shocking in a constitutional sense. It then found "[t]here is nothing in the [School Board or the City's] conduct alleged in Count Two of the Counterclaim that rises to the level of arbitrary or conscience shocking." (Apr. 8, 2024 Order at 3-4).

**{¶25}** "Substantive due process is '[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014), quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). "It protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Id.*, quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-250 (6th Cir. 2003). "It also protects the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions." *Id.*, quoting *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003); *see also Warren v. City of Athens, Ohio*, 411 F.3d 697, 707 (6th Cir. 2005) ("[t]his court has recognized that a substantive due process violation

-11-

occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest"); *Granato v. Davis*, 2014-Ohio-5572, ¶ 75 (2d Dist.).

{¶26} Under the Ohio Constitution, substantive due process protections align closely with those under the Fourteenth Amendment to the United States Constitution. Ohio courts have recognized that substantive due process forbids certain government actions regardless of the fairness of the procedures used to implement them, and the standard for determining a violation often mirrors the "shocks the conscience" test articulated in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). *See Stolz v. J&B Steel Erectors*, 2018-Ohio-5088, ¶ 12-13.

{¶27} Conduct shocks the conscience if it violates the decencies of civilized conduct and includes actions so brutal and offensive that they do not comport with traditional ideas of fair play and decency. *Range*, 763 F.3d at 589, citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-847 (1998); *see also State v. Costilla*, 2001 Ohio App. LEXIS 2032, *12 (3d Dist. May 7, 2001) (the relevant inquiry concerning defendant's substantive due process claim was whether the conduct was so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience).

{¶28} CCHC's allegations fail to state a substantive due process claim. The Contract's language and CCHC's admissions show the School Board had justification for the alleged conduct. *See Braun v. Ann Arbor Charter Twp.*, 519

F.3d 564, 574 (6th Cir. 2008) (due process claim failed where the government provided justification for its challenged conduct). The Contract's terms establish that the School Board wanted either the buildings to be rehabilitated so they could be occupied or the buildings demolished. (*E.g.*, Contract at ¶ 7 ("Upon such timely satisfaction of the CO Condition *or* after the Demolition Work, *whichever is applicable*, the covenants hereunder shall terminate."). (Emphasis added.) CCHC did neither. After CCHC failed to do so in accordance with the Contract's obligations, the School Board reasonably chose to file a lawsuit to enforce the specific performance provisions of the Contract. The School Board's alleged conduct was not "arbitrary and capricious" and certainly does not "shock the conscience." *See Vision Real Estate Invest. Corp. v. Metro. Govt. of Nashville & Davidson Cty.*, 2020 U.S. Dist. LEXIS 140670, *17-18 (M.D.Tenn. Aug. 6, 2020) ("[t]he conduct alleged by Plaintiffs—that Defendants intentionally breached a real estate purchase agreement—is not shocking or arbitrary and capricious," even if Defendants' termination of the contracts was "intentional and preplanned or clandestine and deceitful").

{¶29} Applying our standard of review, and even assuming CCHC has a protected property interest and that another provision of the Constitution does not directly address the conduct alleged by CCHC, the counterclaims do not state a claim for a substantive due process violation. *See Vision Real Estate Invest.* at * 16 (courts have distinguished between constitutionally-protected interests and garden-

variety interests, and contract interests are accorded garden-variety status and thus not protected by substantive due process); *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707 (6th Cir. 2005) ("substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff").

*2. CCHC's Uncompensated Taking Claim*

{¶30} CCHC contends that the trial court erred by dismissing its counterclaim for an uncompensated taking of real property. CCHC claims that it properly pled a claim for an uncompensated taking of private property and that the trial court "misunderstood" CCHC's claims. CCHC contends that the enforcement of the contract constitutes an uncompensated "taking" of private property in violation of the Fifth Amendment.

{¶31} "'The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation.'" *State ex rel. Duncan v. Am. Transmission Sys.*, 2022-Ohio-323, ¶ 11, quoting *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63 (2002), *judgment modified in part on other grounds*, 96 Ohio St.3d 479; Fifth and Fourteenth Amendment to the U.S. Constitution, Ohio Constitution, Article I, Section 19. Ohio's Takings Clause further specifies that, in all cases where private property is taken for public use, compensation must first be made in money or secured by a deposit of money, without deduction for benefits. "The Takings Clauses in Ohio and United States

Constitutions "'prevent government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, ¶ 14, quoting *State ex rel. R.T.G., Inc. v. Ohio*, 98 Ohio St.3d 1, 2002-Ohio-6716, ¶ 33, quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563 (1960). Accordingly, the threshold inquiry is whether the complained-of conduct is properly characterized as a "taking" of property interest for public use without the constitutionally-required compensation. *Am. Transmission Sys.* at ¶ 11.

**{¶32}** With respect to CCHC's counterclaims against the School Board and City, the trial court found that "[n]either [the School Board] nor the City are seeking to take any interest in the Property without just compensation; they are seeking to enforce a contract which, if found to be valid and enforced by this Court, would provide [CCHC] with the compensation bargained for in the Contract." (Apr. 8, 2024 Order at 5).

**{¶33}** We find that CCHC's argument that the enforcement of a contract constitutes an uncompensated "taking" of private property to be misplaced. In *Am. Energy Corp. v. Datkuliak*, 2007-Ohio-7199 (7th Dist.), the Seventh District Court of Appeals emphasized that a judicial decision interpreting legal rights under a deed or contract does not amount to a governmental taking, and that even if the court's interpretation of the deed or contract is erroneous, such error constitutes a mistake of law rather than a taking of private property. *Id.* at ¶ 103. We agree with the trial

court's assessment that CCHC received the benefit of its bargain under the Contract with the School Board and that the enforcement of the Contract does not amount to a government taking.

{¶34} Accordingly, CCHC's counterclaim for uncompensated taking of real property is without merit.

*3. CCHC's Compelled Speech Claim*

{¶35} In its counterclaim, CCHC contended that the enforcement of the contract would violate its constitutional rights by compelling expressive conduct, specifically, requiring CCHC to apply for demolition permits and sell the property, which CCHC argued was compelled speech. Specifically, CCHC contends enforcement of the contract would require it to submit an application for a COA to demolish the buildings which would necessarily require CCHC to state its desire to raze the buildings, something CCHC does not truly want. The trial court concluded that the plaintiffs were not compelling CCHC to speak, but rather asking the court to enforce the speech and expressive conduct previously and voluntarily uttered by CCHC through the contract. The court found that the School Board and the City were not compelling CCHC to speak, but seeking enforcement of the contract terms to which CCHC had already agreed. The court found that CCHC had already "spoken" through the contract and that enforcement of the contract did not amount to compelled speech. Specifically, the trial court found that the School Board and the City "are making no attempt to limit CCHC's free speech or compel them to

speak in any way." (Apr. 8, 2024 Order at 4). Instead, "they are asking the Court to enforce the speech and expressive conduct previously and voluntarily uttered by [CCHC] as a successor to the Napoleon Civic Center Foundation." (*Id.*).

{¶36} The Supreme Court of the United States established in *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) that when parties contractually determine the scope of their legal obligations through contract, enforcement of those obligations under generally applicable laws does not offend the First Amendment simply because enforcement has incidental effects on free speech. *Cohen* at 670-671.

{¶37} Here, CCHC voluntarily agreed to the demolition provisions, including the obligation to apply for a COA, as a condition for acquiring valuable public property for one dollar. The obligation was not imposed by regulatory mandate but was negotiated and agreed to as part of a bargained-for exchange.

{¶38} CCHC's arguments regarding waiver of constitutional rights and the unconstitutional conditions doctrine also fail. CCHC signed the Contract knowing that it contained the demolition provisions, including the requirement to apply for a COA if the renovation deadline was not met. By signing the Contract with full knowledge of its terms, CCHC voluntarily agreed to the obligations and waived any First Amendment objection to enforcement of those obligations.

{¶39} Thus, we find that the trial court did not err by dismissing CCHC's counterclaim that enforcement of the contract violated its constitutional rights to free speech and constituted compelled speech.

{¶40} Having found that the trial court did not err by dismissing CCHC's counterclaims, CCHC's first assignment of error is overruled.

## Second Assignment of Error

**The trial court erred in granting Plaintiff School Board's Motion for Summary Judgment on Counts Two and Four of its Complaint, as Defendant CCHC's numerous affirmative defenses barred relief for the School Board as a matter of law and/or created material issues of fact. See generally Docket # 50.**

## Third Assignment of Error

**The trial court erred in denying Defendant CCHC's Motion for Summary Judgment on All Counts, as CCHC's numerous affirmative defenses entitled CCHC to summary judgment on each count in the City and School Board's Complaint. See generally Docket #50.**

{¶41} In its second assignment of error, CCHC contends that the trial court erred by granting the School Board's motion for summary judgment on Counts Two and Four of the Complaint either because CCHC's affirmative defenses barred relief or created material issues of fact. CCHC's third assignment of error challenges the trial court's decision denying CCHC's cross motion for summary judgment on all counts because its affirmative defenses entitled it to summary judgment.

*Relevant Law: Summary Judgment*

**{¶42}** We review a trial court's decision on summary judgment de novo, applying the same standards as the trial court. *Schlegel v. Summit Cty.*, 2024-Ohio-5678, ¶ 16. "Civ.R. 56 defines the standard to be applied when determining whether a summary judgment should be granted." *Todd Dev. Co., Inc. v. Morgan*, 2008-Ohio-87, ¶ 11. "Civ.R. 56(C) mandates the entry of summary judgment if the evidence, properly submitted, shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

*Standing*

**{¶43}** CCHC first makes an argument regarding standing. We highlight that the trial court granted *the School Board*, not the City, summary judgment. CCHC asserts that "[e]ach party must show some sort of injury—some sort of actual damages—in order to maintain standing." (Appellant's Brief at 26). In support, CCHC further states that, "as counterintuitive as it may sound, a party to a contract does not have standing to prosecute an alleged breach in court unless and until an injury occurs."

**{¶44}** However, CCHC ignores that (1) the Contract's terms survived the delivery of the Quit-Claim Deed; and (2) the trial court only granted the School Board summary judgment on Counts Two and Four of the Complaint, *i.e.*, the counts for specific performance and declaratory judgment, respectively.

{¶45} A claim for specific performance is an equitable claim; it asks for a remedy requiring a party to do something rather than pay damages. *Sarbaugh v. Miller*, 2025-Ohio-382, ¶ 39 (5th Dist.) (a specific performance claim is one which essentially seeks to eliminate the breach of contract itself by requiring the parties to adhere to the terms and conditions of the contract rather than provide monetary damages). A claim for declaratory judgment likewise is an equitable claim. *E.g.*, *Modern Office Methods, Inc. v. Ohio State Univ.*, 2012-Ohio-3587, ¶ 28 (10th Dist.).

{¶46} Accordingly, CCHC's assertion that the School Board needed to show some sort of actual or monetary damages to maintain standing for its specific performance and declaratory judgment claims is incorrect.

*Restraint on Alienation*

{¶47} CCHC argues that Sections 7 and 11 of the Contract are void and unenforceable as an unlawful restraint on alienation. The trial court decided CCHC's claim that the Contract, and its subsequent enforcement, constitutes an unlawful restraint on alienation failed because "those are the terms to which [CCHC] agreed in the Contract." (Jan. 17, 2025 Order at 4). The trial court added that CCHC's legal interest in the Property continues to be subject to the Contract.

{¶48} The School Board argues there is no restraint on alienation because the Property could have been sold at any time, and the purchaser would be subject to the terms of the Contract. The School Board also explains there is a survivorship

clause in the Contract, so the Property is subject to all terms in the Contract and, therefore, it is not true that CCHC has full interest in the property.

{¶49} A traditional definition of an improper restraint on alienation is an attempt by an otherwise effective conveyance (or contract) to cause a later conveyance to be void. *First Fed. S. & L. Assn. v. Perry's Landing, Inc.*, 11 Ohio App.3d 135, 142, fn. 4 (6th Dist.) (providing the traditional definition of restraint on alienation by reference to the Restatement of the Law, Property, § 404). In other words, "[a] restraint on alienation acts to bar conveyance by any means." *"Automatic" Sprinkler v. Kerr*, 1986 Ohio App. LEXIS 7499, *4 (11th Dist. June 30, 1986); *see also Anderson v. Cary*, 36 Ohio St. 506, 517 (1881) ("[t]he owner of property cannot transfer it absolutely to another, and at the same time keep it himself").

{¶50} "Restraints on the . . . transferability of real property are subject to significant scrutiny as they may violate public policy encouraging the free use, enjoyment, and transfer of real property." *Siltstone Resources, L.L.C. v. Ohio Pub. Works Comm.*, 2022-Ohio-483, ¶ 23. Yet, the Supreme Court of Ohio "has time and again recognized and respected the fundamental rights of parties to contract freely with the expectation that the terms of their agreement will be enforced." *Id.*; *see also First Fed. S. & L. Assn.*, 11 Ohio App. 3d at 142 ("[i]n some nebulous sense, . . . all agreements involving real property—including mortgages—'restrain' alienability, given how the particular terms and conditions of those agreements may

affect subsequent transfers or dispositions of the property"). "[I]ndefinite and absolute restraints on transferability are void when there is no linkage between the purpose of the restraint and an indefinite duration." *Siltstone Resources* at ¶ 25 ("[i]n probate law, a testator's devise of real property that contains restrictions on its future sale has been held void"); *see also Bragdon v. Carter*, 2017-Ohio-8257, ¶ 2, 11-12, 14 (4th Dist.) (a restriction on sale of property so that the testator's "children and their heirs shall always have a place to live" was void).

{¶51} We do not find any unlawful restraint on alienation on the facts presented. The terms of the Contract provide that the Property could be sold at any time, although the purchaser would be subject to the terms of the Contract. CCHC could transfer the Property, and the Contract does not act to bar conveyance of the Property.

*Prevented Performance*

{¶52} "The law in Ohio is that a party to a contract who prevents performance on the part of the adverse party cannot rely on that non-performance to claim a breach." *Fort Saginaw Plaza, Inc. v. Hyon Kil Shin*, 2013-Ohio-429, ¶ 15 (7th Dist.). "The doctrine of wrongful prevention of performance may be invoked to excuse the performance of a contractual obligation in a case where a party to the agreement has, in some manner, actively hindered or impeded the attainment of a material part of the bargain." *Carter v. Univ. Park Dev. Corp.*, 2022-Ohio-3462, ¶ 52 (9th Dist.).

{¶53} CCHC argues that the City prevented CCHC's performance by allegedly mischaracterizing CCHC's renovation efforts in the press, resulting in a decrease in donations to CCHC. CCHC also contends that the City canceled open building permits and terminated electricity services to the Property. CCHC contended that the School Board "has clearly been acting in concert with the City" and, accordingly, the actions of the City are also attributable to the School Board. (Appellant's Brief at 34).

{¶54} The trial court found that the "Contract contains no provision which requires [the School Board] to assist [CCHC] in performing under the Contract and the conduct alleged by [CCHC] does not constitute active prevention on the part of [the School Board] or the City." (Jan. 17, 2025 Order at 4). We agree.

{¶55} The record indicates that the alleged actions that CCHC complained of occurred after the June 28, 2022 deadline and, accordingly, *after* CCHC had already breached the Contract. For instance, the City's revocation of CCHC's permit to receive electric power occurred on September 6, 2022, the School Board passed the resolution authorizing the initiation of litigation against CCHC on October 19, 2022, and the School Board and the City entered into the Cost-Sharing Agreement on March 22, 2023.

{¶56} Accordingly, the actions alleged by CCHC could not have prevented its performance of the contract because the Contract had already been breached by CCHC at that time. *See Third Fed. S&L Assn. of Cleveland v. Formanik*, 2016-

Ohio-7478, ¶ 42 (Borrower claimed the bank breached the lending agreement by falsely reporting delinquent loan payments. However, any reporting errors by the bank in the spring of 2010 could not have caused the borrower's failure in repaying the loan balance which was due in 2008); *Equity Inns Partnership, L.P. v. Yun*, 1999 Ohio App. LEXIS 5052, *20-21 (8th Dist.) (prevented performance argument rejected where alleged lack of lessor cooperation occurred after lessee had already defaulted by failing to commence construction by the contractual deadline, and thus could not excuse lessee's nonperformance).

*Remedies Allowed*

{¶57} The trial court's decision to grant specific performance encompasses the entirety of the remedy sought. Specifically, the trial court's issuance of injunctive relief requiring CCHC to comply with its remaining obligations under the Contract effectively provides the same relief as the grant of specific performance itself. Consequently, even if the trial court's grant of injunctive relief were deemed improper, such a determination would have no practical effect on the parties.

{¶58} Furthermore, while CCHC contends that specific performance is generally available only if it is equally accessible to both parties, it has failed to demonstrate—and there is no evidence to suggest—that either party to the Contract lacked the ability to seek specific performance as a remedy.

{¶59} Accordingly, for the aforementioned reasons, CCHC's second and third assignments of error are overruled.

*Conclusion*

**{¶60}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Henry County Court of Common Pleas.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

Case No. 7-25-06

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

Mark C. Miller, Judge

William R. Zimmerman, Judge

John R. Willamowski, Judge

DATED:
/jlm

-26-